IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:20-CV-163-BO

| | |
|---|---|
| STEVEN D. DRAPER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARY-ANN BALDWIN, in her capacity as )<br>Mayor of Raleigh, and CASSANDRA )<br>DECK-BROWN, in her capacity as Police )<br>Chief for the City of Raleigh, and CITY of )<br>RALEIGH, NORTH CAROLINA )<br>)<br>Defendants. )<br>_____ ) | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff brings this action and asks for a narrowly tailored injunction and declaration that defendants may not declare "protests" are "non-essential" outdoor activity so as to stop Defendants from violating his rights under the First Amendment to the United States Constitution and the North Carolina Constitution, and alleges and says:

**I. Preliminary Statement**

1. The United States Constitution guarantees "the right of the people peaceably to assemble, and to petition the Government for a redress of grievances" and the United States Supreme Court has held that the First Amendment right to free speech is "at its zenith" when core political speech is at stake.

2. The North Carolina Constitution guarantees, in Article 1, Section 12, "The people have a right to assemble together to consult for their common good."

3. Responding to the COVID-10 pandemic, North Carolina Governor Roy Cooper has issued a series of Executive Orders, including and particularly relevant for this lawsuit Executive Order 121, a true and accurate copy of which is attached as Exhibit 1.

4. Executive Order 121 contains definitions of essential activities which are allowed, and essential businesses which are allowed to operate.

5. Generally, Executive Order 121 contains Social Distancing Guidelines in Section 2E, which includes requiring at least six feet distancing from other individuals.

6. Executive Order 121 also contains certain prohibitions on mass gatherings, in conjunction with Executive Orders 117 and 120.

7. Subject to Social Distancing Guidelines and restrictions on Mass Gatherings, Executive Order 121 allows a variety of "Essential Activities" under Section 1.3.iii, among which is "outdoor activity" which includes "without limitation, walking, hiking, running, golfing, or biking" and presence in "public parks and open outdoor recreation areas."

8. Subject to the restrictions of Executive Order 121, the public may attend to business in such First Amendment protected activities as religious gatherings and counseling, and media including newspapers, television, and other media services. Exhibit 1, Section 2.C.10-11.

9. Executive Order 121 also declares as "Essential Businesses and Operations" "Beer, wine and liquor stores" and "Retail functions of gas stations and convenience stores" Exhibit 1, Section 2.C.30. Protected as well are fast food drive through and carry-out. Exhibit 1, Section 2.C.19.

10. Executive Order 121 does not limit how many people may gather or wait in the parking lots of Essential Businesses and Operations.

11. Executive Order 121 does not include as a mass gathering such activities as the normal operations of a "shopping mall." Exhibit 1, Section 3.A.2.

12. Executive Order 121 contains a provision that if "its application to any person or circumstances is held invalid by any court of competent jurisdiction" the remaining provisions and applications are severable and remain in effect. Exhibit 1, Section 5.

13. Executive Order 121 provides that it will be enforced by state and local law enforcement officers and that citizens found in violation may be subject to criminal sanctions including imprisonment and fines. Exhibit 1, Section 6.

14. On April 14, 2020, Defendant City of Raleigh, through its Raleigh Police Department, has declared core political speech to be fully prohibited under Executive Order 121 as non-essential activity.

15. The City of Raleigh transmitted through Twitter and other methods this statement to all citizens, "Protesting is a non-essential activity."

16. The City of Raleigh released the same day a public statement through a variety of methods addressed to all citizens including in part, "Under these current and temporary declarations, protesting is not listed as an essential function." The City of Raleigh reminded citizens they would enforce this and citizens could face criminal penalties.

17. On April 14, 2020 the City of Raleigh deployed law enforcement officers to threaten citizens with arrest under the guidance that engaging in protest is now a criminal activity.

18. On April 14, 2020, Defendants informed citizens that an arrest had been made by Capitol City police for the offense of protesting and that Defendants would enforce the law as well.

19. Due to Defendants' actions, plaintiff understands that appearing in public, alone or peaceably assembled with other citizens (even respecting social distancing guidelines), to make

core political speech regarding government actions or police, i.e., "protest," is now completely illegal and subjects plaintiff to arrest.

20. If protesting, i.e., political speech, is found to be non-essential, it would be unlawful for a citizen to even leave his or her home with the idea and purpose of appearing anywhere to make any potentially critical statement concerning government conduct or policy.

21. The Defendants' actions and directives go beyond Executive Order 121, which allows outdoor activities as essential and provides a list "without limitation" yet Defendants have chosen to limit the essential activities by targeting and completing banning the core constitutional right to free speech and peaceable assembly.

## II. Parties

22. Plaintiff is a citizen and resident of North Carolina.

23. Defendant Mayor of Raleigh Mary-Ann Baldwin is and was at all times relevant hereto the duly elected Mayor of Raleigh and as such was responsible for the promulgation and implementation of the policies, procedures, and practices of the City of Raleigh, North Carolina. She is named as a defendant in this action in her official capacity as Mayor.

24. Defendant Police Chief Cassandra Deck-Brown is and was at all times relevant hereto the duly appointed Police Chief of Raleigh and as such was responsible for the promulgation and implementation of the policies, procedures, and practices of the City of Raleigh, North Carolina. She is named as a defendant in this action in her official capacity as Police Chief.

25. Defendant City of Raleigh, North Carolina, is and was at all times relevant hereto a municipality chartered by the State of North Carolina and, as such, was and is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees.

## III. Jurisdiction and Venue

26. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because plaintiff alleges an imminent violation of his rights under the Constitution of the United States. It has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

27. The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202 because the action presents an actual controversy within the Court's jurisdiction. Plaintiff as shown herein has exercised and desires to continue to exercise his rights to free speech and assembly, and is chilled from doing so by threat that free speech conduct will be policed and has resulted in an arrest. Defendants through their actions have made clear the plain and immediate threat of arrest and prosecution for protest speech.

28. Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All defendants are residents of and/or perform their official duties in this district. In addition, a substantial part of the events giving rise to the claims in this Complaint arose in this district.

## IV. Facts

29. The right to free speech, and the right to assemble to express that speech, is a core fundamental right under the United States Constitution.

30. Indeed, the first Continental Congress declared in 1774 that the people "have a right to peaceably assemble, consider their grievances, and petition the king."

31. This right was enshrined in the very first of the Bill of Rights, becoming part of the First Amendment of the United States Constitution.

32. Through the nation's history, freedom of speech and citizens speaking in public have boosted causes such as labor rights, women's suffrage, and the civil rights movement.

33. Freedom of speech and freedom of association and efforts to burden them invoke strict scrutiny by the courts.

34. The City of Raleigh has issued public notices that "protests" are a "non-essential" activity under Executive Order 121.

35. The City of Raleigh has issued public notices that any citizen who "protests" is subject to arrest and prosecution for penalties including imprisonment or fines.

36. The declaration of "protests" as a non-essential activity means that any citizen who anywhere outside the home engages in political speech critical of the government is subject to arrest. "Non-essential activities" in Executive Order 121 are forbidden even if conducted by a single person and even if every and all social distancing guidelines are met.

37. The City of Raleigh position amounts to a complete ban on political speech, provided it is critical of the government, outside the home.

38. The City of Raleigh position is not the least restrictive means to accommodate social distancing. It is not narrowly tailored or tailored at all. Instead it targets and demolishes the exercise of the freedom of core political speech.

39. While the City of Raleigh informs citizens their rights to free speech outside the home are completely suspended, a partial list of activities Executive Order 121 does allow citizens to leave home and conduct include golfing, running, selling and purchasing at the counter a fast food combo meal, purchasing whiskey, purchasing scratch-off lottery tickets, reporters in public space to cover the arrest of persons who protest, religious counseling, boat repair, patronizing pawnbrokers, and visiting a business that will ship or deliver alcoholic beverages.

40. While the City of Raleigh informs citizens their rights to free speech outside the home are completely suspended, Executive Order 121 allows "outdoor activity" as an "essential activity"

and includes as examples "walking, hiking, running, golfing, or biking" and states that the list of allowed activities is "by way of example and without limitation."

41. Executive Order 121 designates "outdoor activity" an "essential activity" provided "individuals comply with Social Distancing Requirements and Mass Gatherings" and provides examples of mundane activities as illustrative and "without limitation." Yet, the City of Raleigh, with nothing more than Executive Order 121 text as basis, declares political speech outside the home – if a "protest" – as "non-essential."

42. The City of Raleigh position flatly burdens free speech, is not supported by the obvious less restrictive means of simply requiring citizens who engage in speech to meet the same social distancing requirements as a jogger, golfer, or person buying a lottery ticket, and so is not remotely related to accomplishing the public health goals of Executive Order 121 but rather is the age old declaration of an entity in power ordering itself beyond public criticism.

43. The City of Raleigh on April 14, 2020 gave all citizens public notice that protesting is a non-essential activity by several methods including the following tweet, the image of which is true and accurate:



44. The City of Raleigh on April 14, 2020 gave all citizens public notice that protesting is a non-essential activity exposing citizens to criminal sanctions by several methods, including the following tweet, the image of which is true and accurate:

> The goal of the Raleigh Police Department is to help residents remain as safe as possible during the COVID-19 pandemic by reminding them to observe the Wake County Stay-at-Home Proclamation and the Governor's Executive Orders. In these unprecedented times and unusual circumstances, both the Governor and the County have declared a state of emergency. Under these current and temporary declarations, protesting is not listed as an essential function.
>
> The Wake County District Attorney is the individual who decides charging language for failure to adhere to the Governor's Orders and the Wake County Proclamation, when charging is appropriate, and what charges individuals may face for violating either one of these orders. However, as a law enforcement agency, the Raleigh Police Department is bound to carry out the regulations stipulated in the Executive Order and the Wake County Proclamation.
>
> But more important is the health and wellness of all who live in our community, including the officers who must engage in circumstances such as these. We simply want everyone to be safe during this very serious public health crisis.
>
> Any questions related to the arrest at the protest at the State Capitol should be directed to the arresting agency, the State Capitol Police.

45. On the same day, the City of Raleigh Police Department used the justification of "non-essential activity" to disrupt citizens from free speech.

46. Plaintiff often expresses political opinions outside his home, and often inside the city limits of the City of Raleigh. If political speech is anywhere most relevant in the state, then it is the capital City of Raleigh. Concerned now that doing so would warrant arrest, plaintiff reached out the morning of April 15, 2020 by letter transmitted by e-mail to the governor's general counsel, the state's attorney general, and the city attorney for the City of Raleigh requesting the entities clarify that political speech, classified as a protest, is allowed, subject to the same social distancing rules for other activities outside the home.

47. Plaintiff requested a response by the end of the week, but no representative from any entity attempted to contact plaintiff.

48. Plaintiff sent a following e-mail on April 17, 2020 advising the contacted entities that he would seek legal redress if the situation remained. Plaintiff forwarded this correspondence plus

the letter from April 15, 2020 to the attorney for the City of Raleigh Police Department as well. No representative from any entity attempted to contact plaintiff.

49. Like thousands of other citizens around the state, plaintiff now understands that merely engaging in political speech outside his home, alone or with others, subjects him to arrest.

50. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

51. As a consequence of defendants' actions, plaintiffs' right to political free speech outside his home is suppressed, and his right to peaceably assemble (consistent with social distancing guidelines which he does not contest) to express political speech is suppressed.

52. The infringement on plaintiff's rights is a simple matter to be cured. Defendants could simply clarify or amend their interpretation of Executive Order 121 to the better and constitutionally valid reading that political speech is not forbidden as a "non-essential" outdoor activity.

53. Any argument that classifying a fundamental right as essential is too dangerous is obviously frivolous given that doing so only puts it on the same ground as golfing, lottery ticket and booze purchasing, or jogging.

54. Nowhere in Executive Order 121 in the definition of outdoor activity, which provides examples "without limitation," is political speech mentioned as a special type of outdoor activity that is prohibited.

## V. First Cause of Action

### Free Speech Under the First Amendment to the U.S. Constitution

55. Paragraphs 1 through 54 are hereby incorporated as if set forth herein.

56. The First Amendment of the Constitution protects political speech, including protests.

57. Core political speech is where the First Amendment is at its zenith. *Meyer v. Grant*, 486 U.S. 414, 421022, 425 (1988). Speaking on matters of public concern "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" and "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (internal citations omitted). Further, "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943)

58. Defendants have prohibited protests entirely as a "non-essential activity." Under Executive Order 121, any person who leaves their home, even alone, to engage in a non-essential activity is subject to arrest.

59. Defendants targeted political speech as many other activities are allowed as essential, and the list given in Executive Order 121 our essential outdoor activity was made "without limitation."

60. Defendants' actions are not neutral or generally applicable, exhibit obvious viewpoint discrimination, clearly and obviously burden the exercise of free speech, and are not narrowly tailored or tailored in any way, despite Executive Order 121 containing a reasonable tailoring mechanism.

61. Requiring plaintiff to abstain from public political speech completely violates plaintiff's constitutional right to free speech.

## VI. Second Cause of Action

**Right to Peaceably Assemble Under the First Amendment to the U.S. Constitution**

62. Paragraphs 1 through 61 are hereby incorporated as if set forth herein.

63. The First Amendment of the Constitution protects political speech and the right to assemble for same, including protests.

64. Core political speech is where the First Amendment is at its zenith. *Meyer v. Grant*, 486 U.S. 414, 421022, 425 (1988). Speaking on matters of public concern "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" and "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (internal citations omitted). Further, "The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943)

65. Defendants have prohibited any assembly in any way to protest entirely as a "non-essential activity." Under Executive Order 121, any person who leaves their home to engage in a non-essential activity is subject to arrest.

66. Defendants targeted political speech as many other activities are allowed as essential, and the list given in Executive Order 121 our essential outdoor activity was made "without limitation."

67. Defendants' actions are not neutral or generally applicable, exhibit obvious viewpoint discrimination, clearly and obviously burden the exercise of free speech and freedom of assembly, and are not narrowly tailored or tailored in any way, despite Executive Order 121 containing a reasonable tailoring mechanism.

68. Requiring plaintiff to abstain completely from assembly for public political speech violates plaintiff's constitutional right to free speech.

## VII. Third Cause of Action

### Right to Assemble Under Article 1 to the North Carolina Constitution

69. Paragraphs 1 through 68 are hereby incorporated as if set forth herein.

70. Article 1 of the North Carolina Constitution grants citizens the right to assemble.

71. Defendants have prohibited assembly to protest entirely as a "non-essential activity." Under Executive Order 121, any person who leaves their home, even alone, to engage in a non-essential activity is subject to arrest.

72. Defendants targeted political speech as many other activities are allowed as essential, and the list given in Executive Order 121 our essential outdoor activity was made "without limitation."

73. Defendants' actions are not neutral or generally applicable, exhibit clear viewpoint discrimination, clearly and obviously burden the exercise of free assembly, and are not narrowly tailored or tailored in any way, despite Executive Order 121 containing a reasonable tailoring mechanism.

74. Requiring plaintiff to abstain completely from assembly for public political speech violates plaintiff's constitutional right to assemble.

WHEREFORE, plaintiff requests this Court enter an order:

a. Declaring that Defendants have unlawfully burdened plaintiff's free speech rights in violation of the First Amendment of the United States Constitution;

b. Declaring the Defendants have unlawfully burdened plaintiff's right to peaceably assemble in violation of the First Amendment of the United States Constitution;

c.  Declaring the Defendants have unlawfully burdened plaintiff's right to assemble in violation of the North Carolina Constitution;

d.  Permanently enjoining Defendants from classifying protests as "non-essential" under Executive Order 121 and subsequent Executive Orders;

e.  Plaintiff specifically is not asking for a declaration that protests are exempt from social distancing rules applicable to other allowed conduct; and

f.  For attorneys fees and costs as applicable.

Dated: April 20, 2020

Respectfully submitted,

*/s/ Steven D. Draper*

Steven D. Draper
Attorney at Law
3900 East Valley Court
Raleigh, NC 27606
919-601-5752
sddllc@yahoo.com
N.C. Bar No. 20922
Attorney and Plaintiff

## VERIFICATION OF COMPLAINT

I, Steven D. Draper, declare as follows:

1. I am the plaintiff in the present case and a citizen of the United States of America and of the State of North Carolina.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called upon to testify I would competently testify as to the matters stated herein.

3. For all other factual statements plaintiff has personal knowledge of them or believes them to be true based on documents and information stated in this document.

4. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Verified Complaint for Declaratory and Injunctive Relief are true and correct. 28 U.S.C. § 1746.

Dated: April 20, 2020

_____
Steven D. Draper